UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| JEFFREY C. SPAW, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. |
| ) | 5:18-cv-230-JMH |
| v. ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| AMCOR RIGID PLASTICS USA, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

\*\*\*

Plaintiff Jeffrey Spaw, a former employee of Amcor Rigid Plastics USA, LLC, brings this action alleging that he was terminated due to his age in violation of the Age Discrimination in Employment Act ("ADEA") and the Kentucky Civil Rights Act ("KCRA"). [DE 1]. Amcor moves for dismissal of the case, or in the alternative for summary judgment, asserting that Spaw's lawsuit is untimely because it violates a six-month limitations period for filing a claim or lawsuit contained in his application for employment and employment contract. [DE 10]. Spaw has responded to Amcor's Motion, arguing that he complied with the limitations period because he filed a claim when he filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") before the expiration of the six-month limitations period. [DE 12]. Amcor has replied [DE 13],

1

making this matter ripe for review. The Court does not find that oral argument will assist with resolution of the issues raised by the parties at this stage. For the reasons stated herein, Defendant's Motion to Dismiss, or in the alternative, Motion for Summary Judgment [DE 10] is **DENIED**.

I. Factual and Procedural Background

A. **The Limitations Period in the Employment Contract and Employee Handbooks**

Jeffrey Spaw was employed by Amcor at a plant located in Nicholasville, Kentucky, beginning June 3, 2011. [DE 1, Complaint pp. 1-2; DE 12-1, Charge of Discrimination to Kentucky Commission on Human Rights, p. 1]. Prior to his employment, Spaw completed an employment application that contained a six-month limitations period for any claim or lawsuit arising out of his employment with Amcor. [DE 10-1, Exh. A, Employment Application, p. 8]. The contractual limitations period found on the fifth page of the application states:

> In consideration for Amcor Rigid Plastic's review of my application, and employment if I am hired, I agree that any claim or lawsuit arising out of my employment with, or my application for employment with, Amcor, or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action, I agree to be bound by the six (6) month period of limitations set forth herein, and I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.

[*Id.* (emphasis in original)]. Below the language containing the limitations period, in a box at the bottom of the same page, the

application states: "**I agree to the terms and conditions stated in the Job Applicant's Agreement and Certification**." [*Id.* (emphasis in original)]. On the same page, in a separate box directly to the right of the language concerning agreement to the terms and conditions, the application says, "I Agree," which is circled on Spaw's application. [*Id.*]. Finally, at the top of the next page, the employment application is signed by "Jeff Spaw" and dated May 24, 2011. [*Id.* at 9].

In addition to the employment application, on March 12, 2014, Spaw signed a "Receipt of Co-Worker Handbook" acknowledgement form that stated:

> Finally, I agree to be bound by the Time Limitation for Filing Claims policy as described in Section 8.8 of the Employee Handbook. I acknowledge that I am required to file a claim or lawsuit against Amcor within six (6) months after the date of the decision, event, or employment action that is the subject of my claim or lawsuit. If a claim or lawsuit is not submitted timely, my claim or lawsuit will be deemed to have been waived and forever released. I understand that the time limitation for filing claims or lawsuits arising out of an employment action may be longer than six (6) months under state or federal law, but I acknowledge that I am bound by the six (6) month time limitation for filing claims set forth in the policy and waive any time limitation for filing claims to the contrary, to the fullest extent permitted by law.

[DE 10-1, Exh. B, Receipt of Co-Worker Handbook form (Adopted Jan. 2013), p. 12]. Additionally, Spaw signed a different Receipt of Co-Worker Handbook acknowledgement form on August 22, 2015 that contained nearly identical language regarding the contractual

3

limitations period. [DE 10-1, Exh. B, Receipt of Co-Worker Handbook form (Adopted Mar. 2015), p. 11]. Finally, the time limitations policy is also outlined in section 8.8 of the Co-Worker Handbook. [DE 1-10, Co-Worker Handbook, p. 45].

**B. Spaw's Termination, Filing of Charge of Discrimination with EEOC, and Lawsuit**

After a series of reprimands, Spaw's employment with Amcor was terminated on May 8, 2017. [DE 1, pp. 2-7; *see* DE 1-2, Supervisor's Report; DE 1-3, Supervisor's Report; DE 1-5, Note to File; DE 1-6, Note to File; DE 1-7, Supervisor's Report; DE 1-8, Supervisor's Report]. At the time of his termination, Spaw was fifty-four years old. [DE 1, p. 2]. Feeling that the reprimands were frivolous, or at least that they failed to justify his termination, and believing that he was terminated based on his age, Spaw filed a charge of age-based discrimination under the ADEA with the EEOC, which was also sent to the Kentucky Commission on Human Rights ("KCHR"). [DE 12-1; *see* DE 1-1, EEOC Dismissal and Notice].[1] Subsequently, the EEOC issued a Dismissal and Notice

---

[1] It is unclear exactly when Spaw filed his charge with the EEOC. The Charge of Discrimination [DE 12-1] is neither signed nor dated. Additionally, the Dismissal and Notice [DE 1-1] is also not dated although it confirms that a charge was filed with the EEOC. Spaw claims that he filed with the EEOC on September 12, 2017 but only cites to the undated Charge of Discrimination. [DE 12, p. 4]. Amcor claims that Spaw did not file with the EEOC until October 14, 2017. [DE 10, p. 4]. Still, the parties do not dispute that Spaw filed a charge with the EEOC and even accepting the later filing date of October 14, 2017, the charge was filed within the

4

of Rights on January 24, 2018 indicating that the "EEOC [was] unable to conclude that the information establishe[d] violations of statutes" and informing Spaw that he had a right to file a lawsuit within ninety days of receiving the notice. [DE 1-1, p. 1]. A stamp at the top of the Dismissal and Notice form indicates it was received on January 26, 2018. [*Id.*]. Then, Spaw initiated this lawsuit on April 4, 2018, alleging violations of the ADEA, 26 U.S.C. § 623 and the KCRA, K.R.S. § 344.040(1).

## II. Standard of Review

As an initial matter, the most appropriate procedural vehicle to determine whether the contractual limitations period bars Spaw's claim is a Motion for Summary Judgment under Fed. R. Civ. P. 56. *See Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 616 (6th Cir. 2013) ("The district court dismissed the case pursuant to Rule 12(b)(6) . . . that rule, however, is generally an inappropriate vehicle for dismissing a claim based upon a statute of limitations." (internal citations and quotations omitted)). According to Fed. R. Civ. P. 7.1(c)(1), expiration of a statute of limitations is an affirmative defense upon which relief may be granted to a defendant based on a fact of set of facts other than those alleged by the plaintiff. *See* Fed. R. Civ. P. 7.1(c); *see also Campbell v. Grand Trunk Western R. Co.*, 238

---

six-month contractual limitations period which expired on November 8, 2017. [*See* DE 10; DE 12].

5

F.3d 772, 775 (6th Cir. 2001). Of course, "the defense of [statute of] limitations may be raised by a Rule 12 motion to dismiss when . . . the time alleged in the complaint shows that an action was not brought within the statutory [limitations] period." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Alternatively, "where the defect does not appear on the face of the complaint, the defendant can still raise [a statute of limitations defense]" that the court will treat as a motion for summary judgment. *Id.* Finally, Rule 12(d) is instructive, providing that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Engleson*, 723 F.3d at 616.

Additionally, Fed. R. Civ. P. 8(c) provides that a party must assert a statute of limitations defense in its responsive pleading or risk waiving the argument. There is no meaningful distinction between statutory statutes of limitations and contractual limitations periods. Courts have routinely referred to contractual limitations periods as "statutes of limitations." *See Ray v. Fedex Corp. Servs., Inc.*, 668 F. Supp. 2d 1063, 1066 (W.D. Tenn. 2009); *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352 (6th Cir. 2004).

Here, there is no mention of the statute of limitations or contractual limitations period on the face of Spaw's complaint. In fact, there is no mention of Spaw's filing a charge with the EEOC on the face of the complaint. Also, there is no discussion in the pleadings about whether the statute of limitations has run or if there is an exception to the statute of limitations that entitles Spaw to relief. Therefore, determining whether the contractual limitations period bars Spaw's claim in this matter necessarily requires the parties to provide extrinsic evidence and make legal arguments outside the original pleadings. Thus, while the outcome may be the same under either the Rule 12(b)(6) or Rule 56 standard, Amcor's Motion is more appropriately analyzed as a motion for summary judgment under Fed. R. Civ. P. 56 than a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the

7

nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering whether summary judgment is appropriate based on the expiration of a statute of limitations, courts "must determine whether (1) the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued." *Campbell,* 238 F.3d at 775.  Initially, "the burden is on the defendant to show that the statute of limitations has run."  *Id.*  If the defendant demonstrates that the statute of limitations has run, "the burden shifts to the plaintiff to establish an exception to the statute of limitations."  *Id.*

### III. Analysis

Pursuant to the ADEA, a plaintiff must file a charge of discrimination with the EEOC as a jurisdictional prerequisite to filing a civil lawsuit.  29 U.S.C. § 626(d); *Oscar Mayer & Co. v. Evans*, 441 U.S. 750 (1979); *Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir. 1986).  Filing a charge with the EEOC "trigger[s] the investigatory and conciliatory procedures of the EEOC so that the Commission may first attempt to obtain voluntary compliance with the law."  *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).  These procedures "notify potential defendants of the nature of plaintiffs' claims

and provide them the opportunity to settle the claims before the EEOC rather than litigate them." *Id.*

Here, Spaw's filing with the EEOC complied with the statutory scheme that requires exhaustion of administrative remedies before commencing a lawsuit. The parties dispute whether filing a charge with the EEOC is a "claim" as contemplated by the Amcor Employment Application and Co-Worker Handbook. Amcor argues that the contractual limitations period is a complete defense to Spaw's lawsuit and moves for summary judgment claiming that the contractual limitations period has run. [DE 10]. In response, Spaw argues that filing a charge of discrimination with the EEOC within the six-month limitations period satisfies his obligation to file a claim within six-months of his termination. [DE 12].

Spaw does not challenge the validity or reasonableness of contractual limitations clause, has not argued that he did not sign the employment application or the receipt of co-worker handbook acknowledgments, has not argued any other contractual defenses, and has not asserted any exceptions to the statute of limitations. [*See id.*]. Thus, the sole issue upon which this case turns is whether Spaw's filing a charge with the EEOC constitutes a "claim" under the limitations provision found in the Amcor Application for Employment and Co-Worker Handbook.

The proper interpretation of a contract, specifically whether a contract is ambiguous, is a question of law to be decided by the

court. *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008); accord *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016). "Ambiguity exists if the language is susceptible to two or more reasonable interpretations." *Royal Ins.*, 525 F.3d at 421 (internal quotations omitted); accord *Dunaway*, 490 S.W.3d at 694-95.

If a contract is unambiguous, the court should look to the four corners of the contract to determine and effectuate the intent of the parties. *Royal Ins.*, 525 F.3d at 421; accord *Dunaway*, 490 S.W.3d at 694-95. Where the language in a contract is unambiguous, the court must read the entire contract and interpret the contract's terms by assigning the contractual language its plain and ordinary meaning. *Royal Ins.*, 525 F.3d at 421; accord *Dunaway*, 490 S.W.3d at 694.

Contract interpretation is generally an issue for the court, but "when construction of the contract requires reference to extrinsic evidence it can become a jury issue." *Lagrew v. Hooks-SupRx, Inc.*, 905 F. Supp. 401, 404 (E.D. Ky. 1995) (citing *Cook United, Inc. v. Waits*, 512 S.W.2d 493 (Ky.1974)); see *Royal Ins.*, 525 F.3d at 422. "When a contract is ambiguous, it is for the jury to determine the meaning of its terms, subject to proper instructions and based upon 'evidence of the surrounding circumstances and the practical construction of the parties.'"

10

*Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276, 280 (6th Cir. 1974) (quoting *Tennessee Consolidated Coal Co. v. United Mine Workers of Am.*, 416 F.2d 1192, 1198 (6th Cir. 1969)). Even if there is ambiguity, "a court may determine that the evidence so overwhelmingly favors one interpretation of that contract that no reasonable person could decide to the contrary." *Royal Ins.*, 525 F.3d at 422 (internal quotations omitted) (citing *Nadherny v. Roseland Prop. Co.*, 390 F.3d 44, 49 (1st Cir. 2004)).

**A. Differences in Language Between the Employment Contract and Co-Worker Handbook**

As an initial matter, the limitations period language in the Amcor employment application varies slightly from the relevant language in the Co-Worker Handbook. The employment application required Spaw "to bring *any* claim or lawsuit" within six months. [DE 10-1, p. 8 (emphasis added)]. The Amcor Co-Worker Handbook, however, required Spaw "to bring *a* claim or lawsuit" within six months. [DE 10-1, p. 12 (emphasis added)].

The parties dispute whether this variation in language results in any substantive or material difference in outcome or effect. [*Compare* DE 12, pp. 4-6, *with* DE 13, pp. 2-3]. The language in the employment application, requiring Spaw to bring any claim or lawsuit within six months suggests that Spaw would have to bring all claims or lawsuits that he had against Amcor within six months. Used in this context, the word "any" seems to

encompass or contemplate multiple claims or lawsuits that must be brought within the six-month period. On the other hand, the language in the co-worker handbook, requiring that Spaw bring a claim or lawsuit within six months, seems to suggest that Spaw must only bring one claim or lawsuit against Amcor. The use of "a" in this context suggests a singular claim or lawsuit that must be brought. The semantics are technical and may seem inconsequential, but in the law, and particularly in the context of contract formation and interpretation, the meaning of words matters.

Here, to the extent that there is a substantive or material difference between the language in the limitations clause in the employment application as opposed to the Co-Worker Handbook, the language in the Co-Worker Handbook must control.

First, there is no indication in the employment application that the terms in the contract are incorporated as terms of an employment application if Spaw is hired. Second, the language contained in the Co-Worker Handbook and Co-Worker Handbook Acknowledgement is more recent than the language in the employment application. Spaw signed a "Receipt of Co-Worker Handbook" acknowledgement in March 2014 and again in August 2015. Thus, Spaw acknowledged receipt of the "a claim or lawsuit" language twice and more recently than the "any claim or lawsuit" language contained in the employment application. As a result, to the

extent that there is a material difference between the language contractual limitations language contained in the employment application and the Co-Worker Handbook, the language in the Co-Worker handbook should govern.

**B. Whether Filing a Charge with the EEOC is a Claim**

Neither the employment application nor the Co-Worker handbook defines the meaning of claim. Thus, the Court must look to the ordinary and plain meaning of the term in the Co-Worker Handbook to determine if there is more than one plausible interpretation of claim as used in the contractual limitations clause. According to the Oxford English Dictionary, a claim is "[a] demand for something as due" or "an assertion of a right to something." Oxford English Dictionary (2d ed. 1989). In the legal context, a claim is "[a] statement that something yet to be proved is true" or "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" or "[a] demand for money, property, or a legal remedy to which one asserts a right." *Claim*, Black's Law Dictionary (10th ed. 2014).

The plain meaning of the word claim demonstrates that filing a charge of discrimination with the EEOC is synonymous with filing a claim. Each charge filed with the EEOC requires the complainant to submit a signed statement of facts and other information that asserts something that has yet to be proved. By filing a charge with the EEOC, Spaw asserted that his employer engaged in age

13

discrimination in violation of federal law. The charge then prompted the EEOC initiate an administrative investigation to determine if discrimination occurred.

Additionally, filing a charge with the EEOC is also an assertion by the employee that they have been discriminated against and that they have a right to be free from such discrimination in the workplace under federal law. In fact, filing a charge with the EEOC is a prerequisite for an aggrieved employee to file a lawsuit in which he or she may demand a right to money, equitable relief, or other legal relief arising out of the alleged unlawful discrimination.

Moreover, courts have routinely referred to the filing of a charge of discrimination with the EEOC as a claim, at least to the extent that filing a charge of discrimination with the EEOC must necessarily include an underlying claim of discrimination. *See id.* ("[T]he charge filed did not give the EEOC sufficient notice of Davis' age discrimination claim to investigate or facilitate conciliation with her employer on that ground."); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995) ("Thus a charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the *claims* before a lawsuit [is] filed." (emphasis added)); *Weigel v. Baptist Hosp. of*

14

*E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002) ("[W]here facts related with respect to the charged *claim* would prompt the EEOC to investigate a different, uncharged *claim*, the plaintiff is not precluded from bringing suit on that *claim*." (emphasis added)); *McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843, 854 (E.D. Ky. 2015) ("[Plaintiff] contends that the narrative attached to his charge provided the EEOC with the facts necessary to investigate his retaliation *claim*." (emphasis added)); *Morton v. ICI Acrylics, Inc.*, 69 F. Supp. 1038, 1042 (W.D. Tenn. 1999) ("In order to file suit under the ADEA, a plaintiff must have first filed a *claim* with the EEOC. . . . The EEOC *claim* . . ." (emphasis added)).

Even so, Amcor cites authorities that appear to point in the other direction and indicate that filing a charge with the EEOC is not a claim. First, Amcor relies on *Thurman*, 397 F.3d 352 (6th Cir. 2004) to suggest that filing a charge with the EEOC is not a claim or lawsuit that will satisfy the contractual limitations period. [DE 10, p. 10; DE 13, p. 2-3]. Amcor is correct that the language in *Thurman* and the language found in the application for employment here are nearly identical, both requiring the employee to bring "any claim or lawsuit" within a six-month contractual limitations period. [DE 13, p. 2]. Still, while the *Thurman* court acknowledged that the plaintiff filed a complaint with the Michigan Department of Civil Rights, it did not rule that this administrative complaint was not a claim. *See Thurman*, 397 F.3d

at 358. The plaintiff's action was time barred in *Thurman* because her first lawsuit was dismissed, and the second lawsuit was outside the six-month contractual limitations period. *See id.* at 355, 358-59.

In fact, *Thurman* could be read to support the conclusion that an administrative complaint or charge is synonymous with a claim. In discussing whether the abbreviated limitations clause was reasonable, the court noted that Ms. Thurman had filed a previous lawsuit, brought a criminal complaint, and that "Ms. Thurman filed a complaint with the Michigan Department of Civil Rights." *Id.* at 358. The court went on to say that "[t]hese facts demonstrate that she had ample opportunity to investigate her *claims* and determine her losses." *Id.* (emphasis added). Thus, the *Thurman* court seemed to interpret the administrative filing with the Michigan Department of Civil Rights as constituting a claim.

Next, Amcor cites *Aytes* to support the contention that Spaw's EEOC filing is not a claim. But in *Aytes*, the contractual limitation language was quite different than the language employed in the limitations period found in Amcor's co-worker handbook. In *Aytes*, the plaintiff was required "to bring a *legal action*" in six months. See *Aytes v. Fed. Express Corp.*, No. 5:10-cv-230, 2012 WL 1831272 at *10 (E.D. Ky. May 18, 2012) (emphasis added). The *Aytes* court concluded that the terms "legal action" and "complaint" and "lawsuit" apply exclusively to a judicial proceeding. *See id.*;

16

*see also Adams v. Fedex Express*, No. 5:15-cv-376, 2016 WL 6211277 at * 4 (E.D. Ky. Oct. 24, 2016) (concluding that filing a charge with the EEOC does not constitute a legal action in state court under Kentucky civil rights statutes). The language in the present contract required Spaw "to file *a claim or lawsuit* against Amcor within six (6) months after the date of the decision, event, or employment action that is the subject of [his] *claim or lawsuit*." [DE 10-1, p. 12 (emphasis added)]. *Aytes* and *Adams* simply stand for the proposition that filing a charge of discrimination with the EEOC does not constitute filing a legal action, complaint, or lawsuit. The authorities that Amcor relies are are distinguishable from the current case and do not hold that filing an EEOC charge is not synonymous with a claim.

Again, the controlling inquiry here is whether filing an EEOC charge constitutes filing a claim under the Co-Worker Handbook. While other cases and authorities are instructive, the main inquiry is what was meant by the language that required Spaw to file a claim or lawsuit against Amcor within six months of the date of the decision or event that is the subject of his action.

Ultimately, the act of filing an EEOC charge constitutes a claim that satisfied Spaw's obligation under limitations period in the Co-Worker Handbook. The Co-Worker Handbook is not ambiguous. The plain meaning of claim demonstrates that filing an EEOC charge is synonymous with filing a claim. Additionally, many courts refer

to the EEOC charge as a claim and do not appear to interpret the word claim to apply exclusively to judicial proceedings. In sum, Spaw's EEOC charge was based on an underlying allegation or claim that Amcor had engaged in unlawful age discrimination.

Of course, Amcor may have intended for an EEOC charge to be excluded from the meaning of claim in the Co-Worker Handbook. But Amcor was the drafter of the contract and was in the best position to clarify the meaning of claim in the Co-Worker Handbook. For instance, Amcor could have simply defined the meaning of claim in the Co-Worker Handbook. Similarly, Amcor could have expressly excluded filing an EEOC charge as a claim in the text of the Co-Worker Handbook. Finally, Amcor could have been more specific and used language like that in *Aytes* and *Adams* requiring that Spaw file any legal action, lawsuit, or complaint within six months. Unfortunately, Amcor did not define the word claim and thus the meaning of claim in the Co-Worker handbook is subject to multiple reasonable interpretations.

Ultimately, considering the common usage of the word claim and the fact that courts routinely refer to EEOC charges as claims, Spaw's filing with the EEOC satisfied his obligation to file a claim within six months.

**C. Timeliness of Spaw's Lawsuit**

Lastly, Amcor asserts that even if Spaw argues that his EEOC filing tolled the limitations period, Spaw's lawsuit still fails

because it was not filed until approximately three months after the EEOC issued a right to sue notice, making the complaint untimely. [DE 10, p. 2 n.3]. Of course, the burden is on Amcor to show that the statute of limitations has run. *Campbell,* 238 F.3d at 775.

Here, Spaw filed a claim within the six-month contractual limitations period when he filed a charge with the EEOC. As such, Amcor has failed to demonstrate that the contractual limitations period expired and Spaw's lawsuit is timely.

### IV. Conclusion

In this case, Spaw complied with the contractual limitations period contained in the Amcor Co-Worker Handbook when he filed a charge of discrimination with the EEOC within the six-month contractual limitations period for claims or lawsuits. Additionally, Spaw filed his lawsuit within ninety days of the EEOC right to sue letter. As such, Amcor has failed to demonstrate that Spaw's lawsuit is untimely and summary judgment is inappropriate at this stage in the litigation.

Accordingly, for the foregoing reasons, **IT IS ORDERED** that Amcor's Motion to Dismiss or, in the alternative, Motion for Summary Judgment [DE 10] is **DENIED**.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge